IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JONATHAN MARCUS GREEN, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-827 |
| | § | |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal Justice- | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## <u>MEMORANDUM AND ORDER DENYING<br>PETITION FOR WRIT OF HABEAS CORPUS</u>

Petitioner Jonathan Marcus Green is a Texas death row inmate.  This case is before the Court on Green's Petition for Writ of Habeas Corpus (Doc. # 1), and Respondent Nathaniel Quarterman's Motion for Summary Judgment (Doc. # 7).  Having carefully considered the Petition, the Summary Judgment Motion, all the arguments and authorities submitted by counsel, and the entire record, the Court is of the opinion that Quarterman's Motion for Summary Judgment must be GRANTED, and Green's Petition for Writ of Habeas Corpus should be DENIED.

## I.   **BACKGROUND**

The evidence established that on the evening of June 21, 2000, 12 year old Christina Neal and her sister Victoria went to visit their friend Maria.  Christina and Victoria had a fight and Christina left.   When she had not returned home by the next morning, Victoria went looking for her and found her broken glasses by the side of the road.  Family, friends, neighbors and police searched for Christina over the next two days.  During the search, Victoria found Christina's bracelet and necklace near a pathway in the woods near the Neal home, and Christina's other sister, Jennifer, and her mother found some pink underwear that they thought might belong to Christina.  14 Tr. at 59-155.[1]

FBI Special Agent Justin Fox interviewed Green as part of his investigation of Christina's disappearance.  He showed Green a picture of Christina and asked for permission to search his house.   Green stated that he had seen Christina before but denied any knowledge of, or involvement in, her disappearance.  Green consented to a search of his home as long as he could be present.  Police conducted a brief search of the interior and perimeter of Green's house and found nothing significant.

Several days later, Fox again spoke to Green on a dirt road about 100 yards from Green's house.  Green offered an alibi and again denied any knowledge of Christina's disappearance.

Fox and Detective Don Gay of the Montgomery County Sheriff's Department spoke

---

[1]      "Tr." refers to the transcript of Green's trial.

to Green on a third occasion at Green's house.  This third meeting was prompted by a statement to police by Manuel Jimenez, Victoria Neal's boyfriend and Green's next door neighbor, that he remembered a big fire on Green's property the day after Christina disappeared.  Fox wanted to search the burn pile area and Green consented to the search. Fox and Gay then left, and an evidence response team led by FBI Special Agent Mark Young searched the area.  A short while later, Special Agent Young told them that Green had withdrawn his consent to search after the evidence response team used a probe to check beneath the soil.  The initial probe indicated that the ground had recently been dug up, and released an odor of decaying flesh.  15 Tr. at 147-49.

Fox, Gay, Young and Special Agent Sue Hillard then sought and obtained a search warrant for Green's property.  When they returned to the property to execute the warrant, they discovered that the burn pile had been dug up to reveal what Fox described as a shallow grave, about six feet long, three feet wide, and several feet deep.  There was a foul odor emanating from the grave.  Green admitted that he dug up the burn pile, claiming that he only removed trash and that he did so to show the FBI that there was no body there.  Fox testified that there was more trash piled on the hole than had been there when Green originally consented to the search.  Green also had changed clothes in the interim.  14 Tr. at 265-314.

Agent Hillard testified that, after discovering that Green had dug up the burn pile, the FBI called for a cadaver dog – a dog trained to find human remains.  The dog was brought to the site, and Hillard and the dog handler entered Green's house with the dog.  The dog started indicating near a chair.  Agent Hillard looked over the back of the chair with a

flashlight and saw a human foot sticking out of a bag.  15 Tr. at 17-28.

Agent Young overheard Green tell another person that some unidentified Mexicans were "setting him up" by placing a body in his house.  Young testified that when Green made this statement, no one had yet told him that the police found a body in his house.  *Id.* at 159-60.  The body was Christina Neal's.[2]  *Id.* at 173.

Police recovered burned remnants of Christina's clothing and personal effects from the burn pile on Green's property.  16 Tr. at 10-13.   They also found ligatures on her neck and wrists.  *Id.* at 63-70.

DNA testing revealed that a hair recovered from Christina's pubic area matched Green and did not match Christina.  17 Tr. at 67-71.  An autopsy revealed bruising to the front and back of Christina's neck.  Along with the ligatures found with Christina's body, this bruising led the medical examiner to the conclusion that Christina was strangled to death.   The medical examiner also discovered bruising to Christina's upper left thigh, between the legs, an additional bruise just above the pubic bone, and a bruise below the skin near the anus. The medical examiner testified that these kinds of injuries are very common on sexual assault victims.  *Id.* at 91-107.  Fibers recovered from the hole in Green's backyard matched fibers found on Green's clothing.  Other fibers recovered from the hole matched fibers recovered from the bag in which the police found Christina's body, and the ligatures.  Fibers from the carpet in Green's house matched fibers recovered from her underwear and on a piece of cloth

---

[2]      Christina's body was partially decomposed by the time it was found.  Her identity was established through DNA testing.  16 Tr. at 152-56; 17 Tr. at 90.

found in Christina's mouth.  18 Tr. at 23-33.  The defense called no witnesses.  *Id.* at 152.

The jury found Green guilty of capital murder for murdering Christina Neal during the course

of committing or attempting to commit kidnapping or aggravated sexual assault.  19 Tr. at

92; 14 Tr. at 50.

During the penalty phase, the State presented evidence that Green had committed two

prior rapes.  22 Tr. at 8-56.  The State also presented evidence that Green stole a pony from

a nearby petting zoo and stabbed it to death.  *Id.* at 72-114.   Two Montgomery County

Sheriff's Deputies testified that Green made threatening remarks toward officers and other

inmates while incarcerated in the Montgomery County jail.  He also stole some personal

items from another inmate, slamming the other inmate's head against a wall in the process.

On one occasion, Green had a violent encounter with one of his jailers.  It took five or six

officers to subdue Green on that occasion.  *Id.* at 117-58.

Green's father testified that he and Green's mother divorced in the late 1960s.  Green

and his three siblings lived with their mother after the divorce.  Green's older brother

drowned when he was 15 years old.  Mr. Green told the jury that Green was not a troubled

child and, in his opinion, would not be a threat to anyone if imprisoned for life.  *Id.* at 163-

72.

Green's sister testified that Green was a football player in high school and attended

a junior college.  She stated that he changed after the death of his brother, when Green was

about 12 years old, and his mother, when Green was in his early 30s.  *Id.* at 176-83.

The pastor of Green's childhood church testified that Green was an excellent high

school football player but suffered a career-ending injury during his first semester in college. The pastor also ministers at the Montgomery County jail.  He testified that Green was unruly when he first encountered him at the jail but, after counseling from the pastor, Green changed and began helping other inmates.  *Id.* at 189-93.

The jury found that there is a reasonable probability that Green will commit future criminal acts of violence constituting a continuing threat to society, and that there was insufficient mitigating evidence to justify a sentence of life imprisonment. 23 Tr. at 12-13, 53.  Accordingly, the trial court sentenced Green to death. *Id.* at 53-54.  The Texas Court of Criminal Appeals affirmed Green's conviction and sentence, *Green v. State*, No. AP-74,398 (Tex.Crim.App. Dec. 17, 2004), *cert. denied,* 547 U.S. 1005 (2006), and denied Green's state application for a writ of habeas corpus, *Ex Parte Green*, No. 61,225-01 (Tex.Crim.App. Mar. 23, 2005).  Green filed this federal petition for a writ of habeas corpus on March 6, 2007.

## II.    APPLICABLE LEGAL STANDARDS

### A.    The Anti-Terrorism and Effective Death Penalty Act

This federal petition for habeas corpus relief is governed by the applicable provisions of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320, 335-36 (1997).  Under the AEDPA, federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented

in the State court proceeding."  28 U.S.C. § 2254(d); *Kitchens v. Johnson*, 190 F.3d 698, 700

(5th Cir. 1999).

For questions of law or mixed questions of law and fact adjudicated on the merits in

state court, this Court may grant habeas relief under 28 U.S.C. § 2254(d)(1) only if the state

court decision "was contrary to, or involved an unreasonable application of, clearly

established [Supreme Court precedent]."  *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.),

*cert. denied*, 534 U.S. 885 (2001).  Under the "contrary to" clause, this Court may afford

habeas relief only if "'the state court arrives at a conclusion opposite to that reached by . . .

[the Supreme Court] on a question of law or if the state court decides a case differently than

. . . [the Supreme Court] has on a set of materially indistinguishable facts.'"  *Dowthitt v.

Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362,

406 (2000)), *cert. denied*, 532 U.S. 915 (2001).

The "unreasonable application" standard permits federal habeas corpus relief only if

a state court decision "identifies the correct governing legal rule from [the Supreme Court]

cases but unreasonably applies it to the facts of the particular state prisoner's case" or "if the

state court either unreasonably extends a legal principle from [Supreme Court] precedent to

a new context where it should not apply or unreasonably refuses to extend that principle to

a new context where it should apply."  *Williams*, 529 U.S. at 406.  "In applying this standard,

we must decide (1) what was the decision of the state courts with regard to the questions

before us and (2) whether there is any established federal law, as explicated by the Supreme

Court, with which the state court decision conflicts."  *Hoover v. Johnson*, 193 F.3d 366, 368

(5th Cir. 1999).  A federal court's "focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence."  *Neal v. Puckett*, 239 F.3d 683, 696 (5th Cir. 2001), *aff'd*, 286 F.3d 230 (5th Cir. 2002) (en banc), *cert. denied* 537 U.S. 1104 (2003).  The focus for a federal court under the "unreasonable application" prong becomes "whether the state court's determination is 'at least minimally consistent with the facts and circumstances of the case.'" *Id.* (quoting *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997)); *see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001) ("Even though we cannot reverse a decision merely because we would reach a different outcome, we must reverse when we conclude that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'")

The AEDPA precludes federal habeas relief on factual issues unless the state court's adjudication of the merits was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(2); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The state court's factual determinations are presumed correct unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Jackson v. Anderson*, 112 F.3d 823, 824-25 (5th Cir. 1997), *cert. denied*, 522 U.S. 1119 (1998).

**B.**     **The Standard for Summary Judgment in Habeas Corpus Cases**

In ordinary civil cases, a district court considering a motion for summary judgment is required to construe the facts of the case in the light most favorable to the non-moving party.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986) (The "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor").  "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000).  This principle is limited, however; Rule 56 applies insofar as it is consistent with established habeas practice and procedure.  *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (citing Rule 11 of the Rules Governing Section 2254 Cases).  Therefore, § 2254(e)(1) – which mandates that findings of fact made by a state court are "presumed to be correct" – overrides the ordinary summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmoving party.  *See id*.  Unless the petition can "rebut[ ] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct.  *See id*.  Thus, the Court may not construe the facts in the state petitioner's favor where the prisoner's factual allegations have been adversely resolved by express or implicit findings of the state courts, and the prisoner fails to demonstrate by clear and convincing evidence that the presumption of correctness in 28 U.S.C. § 2254(e)(1) should not apply.  *See Marshall v. Lonberger*, 459 U.S. 422, 432 (1983); *Sumner v. Mata*, 449 U.S. 539, 547 (1981); *May v. Collins*, 955 F.2d 299, 310 (5th Cir.

1991), *cert. denied*, 504 U.S. 901 (1992); *Emery v. Johnson*, 940 F.Supp. 1046, 1051 (S.D. Tex. 1996), *aff'd*, 139 F.3d 191 (5th Cir. 1997), *cert. denied*, 525 U.S. 969 (1998).

## III.   ANALYSIS

Green's petition raises 11 claims for relief.  They are addressed in turn below.

### A.   Unexhausted Claims

In his second claim for relief, Green argues that the Eighth Amendment bars his execution because he is mentally retarded.  In his third and fourth claims for relief, Green argues that he is mentally ill, and that the combination of mental illness and mental retardation makes his execution unconstitutional.  In his ninth claim for relief, Green claims that the State presented false testimony of sexual assault.

In *Atkins v. Virginia*, 536 U.S. 304 (2002), the Supreme Court held that the Eighth Amendment prohibition of cruel and unusual punishment bars the execution of mentally retarded offenders.  Green's claim of mental retardation falls under *Atkins*.  His third and fourth claims call for an extension of *Atkins* to cover mentally ill offenders.  In *Napue v. Illinois*, 360 U.S. 264 (1959), the Supreme Court held that a prosecutor violates due process by knowingly presenting false evidence.  Green, however, never raised his second, third, fourth, or ninth claims in the Texas state courts.

### 1.   Exhaustion and Procedural Default

The AEDPA requires that a prisoner exhaust his available State remedies before raising a claim in a federal habeas petition.

An application for a writ of habeas corpus on behalf of a person

> in custody pursuant to the judgment of a state court shall not be granted unless it appears that (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). As the Fifth Circuit explained in a pre-AEDPA case, "federal courts must respect the autonomy of state courts by requiring that petitioners advance in state court all grounds for relief, as well as factual allegations supporting those grounds. "[A]bsent special circumstances, a federal habeas petitioner must exhaust his state remedies by pressing his claims in state court before he may seek federal habeas relief." *Orman v. Cain*, 228 F.3d 616, 619-20 (5th Cir. 2000); *see* 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . .").

Green did file a motion for a mental competence examination in the state habeas court, SH. at 91-99, but that motion argued only that Green's mental condition prevented him from assisting his state post-conviction counsel requiring cessation of post-conviction proceedings as a matter of Texas and federal law. He did not claim, as he does here, that his alleged mental illness would, by itself or in combination with his alleged mental retardation, render his conviction, sentence or execution unconstitutional. *See id.* at 92-94. This does not satisfy the exhaustion requirement.

> To exhaust available state court remedies, a habeas petitioner must "fairly present" all the claims in his habeas corpus petition

> to the highest available state court, alerting the court to the
> federal nature of his claim.  28 U.S.C. § 2254(d)(2). "A prisoner
> fairly presents a claim to the state court when he asserts the
> claim 'in terms so particular as to call to mind a specific right
> protected by the Constitution' or alleges 'a pattern of facts that
> is well within the mainstream of constitutional litigation.'"
> *Baldwin v. Reese,* 541 U.S. 27, 124 S.Ct. 1347, 158 L.Ed.2d 64
> (2004). "[I]t is not enough that all the facts necessary to support
> the federal claim were before the state courts or that a somewhat
> similar state-law claim was made." *Wilder v. Cockrell,* 274 F.3d
> 255, 259 (5th Cir.2001) (quoting *Anderson v. Harless,* 459 U.S. 4,
> 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982)).

*Kittelson v. Dretke*, 426 F.3d 306, 315 (5th Cir. 2005).  Green's postconviction motion did

not fairly present the claims raised in his federal petition, *i.e.*, that his current  mental status

renders his conviction and sentence unconstitutional.

Ordinarily, a federal habeas petition that contains unexhausted claims is dismissed

without prejudice, allowing the petitioner to return to the state forum to present his

unexhausted claims.  *Rose v. Lundy*, 455 U.S. 509 (1982).  Such a result in this case,

however, would be futile because Green's unexhausted claims would be procedurally barred

as an abuse of the writ under Texas law.  A procedural bar for federal habeas review occurs

if the court to which a petitioner must present his claims to satisfy the exhaustion requirement

would now find the unexhausted claims procedurally barred.  *Coleman v. Thompson*, 501

U.S. 722, 735 n.1 (1991).

Texas prohibits successive writs challenging the same conviction except in narrow

circumstances.  TEX.CODE CRIM.PROC.ANN. art. 11.071 § 5(a) (Vernon Supp. 2002).  The

Texas Court of Criminal Appeals will not consider the merits or grant relief on a subsequent

habeas application unless the application contains sufficient specific facts establishing the following:

> (1) the current claims have not been and could not have been presented previously in an original application or in a previously considered application because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or

> (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt.

*Id.* The Texas Court of Criminal Appeals applies its abuse of the writ doctrine regularly and strictly. *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995) (per curiam). Green does not claim that he could not have presented these claims in his direct appeal or his state habeas petition because the factual basis for the claims did not exist. Therefore, Green's unexhausted claims do not fit within the exceptions to the successive writ statute and would be procedurally defaulted in the Texas courts. *Coleman*, 501 U.S. at 735 n.1. That bar precludes this Court from reviewing his claims absent a showing of cause for the default and actual prejudice attributable to the default, or that this Court's refusal to review the claim will result in a fundamental miscarriage of justice. *Id.* at 750.

A "miscarriage of justice" means actual innocence, either of the crime for which Green was convicted or of the death penalty. *Sawyer v. Whitley*, 505 U.S. 333, 335 (1992). "Actual innocence of the death penalty" means that, but for a constitutional error, Green would not have been legally eligible for a sentence of death. *Id.* To show actual innocence,

> [T]he prisoner must show a fair probability that, in light of all

> the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after trial, the trier of the facts would have entertained a reasonable doubt of his guilt.

*Kuhlmann v. Wilson*, 477 U.S. 436, 455 n.17 (1986) (quotation marks omitted).  More succinctly, the petitioner must show that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" in light of the evidence now presented.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Green makes no argument that cause exists for his default or that he is actually innocent.[3]  Therefore, this Court cannot address his second through fourth and ninth claims for relief.

## 2.   Merits of Retardation Claim: Lack Of Evidence

Even if the claim of mental retardation were not procedurally barred, it would fail on the merits.  Green offers no evidence to support this mental retardation claim.  "The burden of proving that a constitutional violation occurred is, of course, on a habeas petitioner." *Lockett v. Anderson*, 230 F.3d 695, 707 (5th Cir. 2000).  Because Green presents no evidence demonstrating that he is mentally retarded, he fails to meet his burden of proof.  Accordingly, Green would not be entitled to relief on this claim even if the claim was properly exhausted.

---

[3]   Any argument that mental retardation itself constitutes "actual innocence of the death penalty" by virtue of the fact that mental retardation is a constitutional bar to execution under *Atkins* has been implicitly rejected by the Fifth Circuit.  *See Moore v. Quarterman*, 491 F.3d 213, 220-24 (5th Cir. 2007) (finding *Atkins* claim unexhausted and procedurally defaulted).

3.      *Teague v. Lane*

Green cites no case law holding that mental illness standing alone, or in combination with mental retardation, renders a death sentence unconstitutional.[4]  Rather, he asks this Court to extend the rationale behind *Atkins* to cases in which the petitioner suffers from some combination of mental illness and mental retardation.

A federal court cannot create a new constitutional rule of criminal procedure on habeas review.  *Teague v. Lane*, 489 U.S. 288 (1989).  The Supreme Court explained that

> a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government.  To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.

*Id.* at 301 (emphasis in original).  The AEDPA effectively codified the *Teague* non-retroactivity rule "such that federal habeas courts must deny relief that is contingent upon a rule of law not clearly established at the time the conviction becomes final."  *Peterson v. Cain*, 302 F.3d 508, 511(5th Cir.), *cert. denied*, 537 U.S. 1118 (2002).  Because the rule Green seeks was not dictated by *Atkins*, which addresses only the issue of mental retardation, or any other case, this Court could not grant the relief Green seeks even if the claim was properly exhausted.

B.      **Incompetence To Be Executed**

In his first claim for relief, Green contends that he is mentally ill and incompetent to

---

[4]      This is distinct from Green's claim that he is incompetent to be executed, discussed *infra*, and his *Atkins* claim.

be executed.  "The Eighth Amendment prohibits the State from inflicting the penalty of death upon a prisoner who is insane." *Ford v. Wainwright*, 477 U.S. 399, 410 (1986).  A prisoner is competent to be executed, within the meaning of *Ford*, if he is able to "understand the fact of his impending execution and the reason for it." *Barnard v. Collins*, 13 F.3d 871, 876 (5th Cir.), *cert. denied*, 510 U.S. 1102 (1994).  Any such claim, however, can only be evaluated in close proximity to the prisoner's scheduled execution.  "[T]he issue of sanity is properly considered in proximity to the execution." *Herrera v. Collins*, 506 U.S. 390, 406 (1993). If execution is not imminent, such a claim is usually dismissed on ripeness grounds, *see Nguyen v. Gibson*, 162 F.3d 600, 602 (10th Cir.1998), subject to being re-urged once an execution date has been set, *see Patterson v. Dretke*, 370 F.3d 480 (5th Cir.), *cert. denied*, 541 U.S. 1058 (2004).

Green acknowledges that he does not have an execution date and concedes that this claim is unripe.  Accordingly, no relief can be granted on this claim at this time.

## C.   **Due Process**

Green was indicted for capital murder for murdering Christina Neal while in the course of kidnapping or sexually assaulting her.  14 Tr. at 50.  The jury returned a general verdict finding him guilty of capital murder, but not specifying whether it found Green guilty of murdering Neal during the course of kidnapping her, or during the course of sexually assaulting her.  19 Tr. at 92.  In his fifth claim for relief, Green argues that the jury's failure to specify which underlying felony it used to elevate the murder to capital murder violated his right to due process of law.

In *Schad v. Arizona*, 501 U.S. 624 (1991), the petitioner was convicted of capital murder under a statute defining capital murder, *inter alia*, as premeditated murder or a murder committed during the commission or attempted commission of robbery.  The jury convicted Schad on a general verdict.  *Id.* at 628-29.  The Supreme Court rejected Schad's argument that the constitution requires jury unanimity on the theory underlying the finding of guilt.  "'[T]here is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.'"  *Id.* at 631 (quoting *McKoy v. North Carolina*, 494 U.S. 433, 449 (1990)).  Green argues, however, that the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), "has changed the way the matter should be examined."  Pet. at 30.

Apprendi was convicted of firing a gun into the home of an African-American family that recently had moved into a previously all-white neighborhood.  New Jersey law made possession of a firearm for an unlawful purpose a felony punishable by five to ten years in prison.  A separate statute provided for an extended term of 10 to 20 years if the trial judge found by a preponderance of the evidence that "the defendant . . . acted with a purpose to intimidate an individual or group of individuals because of race [or] color . . . ."  *Id*. at 468.  Rejecting New Jersey's argument that the hate crimes provision was merely a sentencing factor, and not a necessary element of the offense, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Id.* at 490.  The Court extended *Apprendi* to capital sentencing proceedings in *Ring v. Arizona*,

536 U.S. 584 (2002).  Notably, the Court did not state in either *Apprendi* or *Ring* that it was overruling *Schad*.

Unlike *Apprendi* and *Ring*, there is no question that the disputed issue – the underlying felony used to elevate Green's crime to capital murder – was decided by the jury. Green also does not dispute that the jury found beyond a reasonable doubt that he committed such an underlying felony.  His complaint is that the jury's general verdict provides no information about whether the jurors all found the same underlying felony, or whether some found that Green murdered during the commission or attempted commission of kidnapping, and some during the commission or attempted commission of aggravated sexual assault. This claim does not fall under *Apprendi*, which is concerned with the constitutional rights to trial by jury and conviction only upon proof of guilt beyond a reasonable doubt.  Rather, the claim falls squarely under *Schad*.

The Texas Court of Criminal Appeals has explained that

> In proving capital murder, the State must prove that the accused intentionally or knowingly caused the death of an individual and also that the accused engaged in other criminal conduct (*i.e.*, kidnapping . . . [or] aggravated sexual assault . . .) or had knowledge of certain circumstances (*i.e.*, that the victim was a peace officer).  We have therefore recognized that capital murder is a result of conduct offense which also includes nature of circumstances and/or nature of conduct elements depending upon the underlying conduct which elevates the intentional murder to capital murder.

*Patrick v. State*, 906 S.W.2d 481, 491 (Tex.Crim.App. 1995) (internal citation omitted).  The State need only prove the killing, the requisite *mens rea*, and underlying criminal conduct as

specified in the statute.  The State need not convince all the jurors of the same underlying criminal conduct.  In Green's case, the State had to convince all twelve jurors beyond a reasonable doubt that Green committed the murder while committing or attempting to commit kidnapping or aggravated sexual assault.  If all the jurors found that the State proved beyond a reasonable doubt at least one of these underlying felonies, that is sufficient, even if the jurors did not all agree on *which* underlying felony the State proved.  This is because the statute uses the enumerated underlying felonies not as separate elements of the crime of capital murder, but as the means of satisfying the "nature of conduct" requirement.  *See Schad*, 501 U.S. at 637.  Therefore, even if the jurors did not agree on the specific underlying felony, all twelve found that Green committed the murder while committing kidnapping *or* aggravated sexual assault, as the statute requires.

> We have never suggested that in returning general verdicts . . . the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone.  In these cases, as in litigation generally, "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line.  Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict."

*Schad*, 501 U.S. at 631-32 (quoting *McKoy*, 494 U.S. at 449 (Blackmun, J., concurring) (footnotes omitted)).

Green's claim does not implicate the concerns animating the Supreme Court's decisions in *Apprendi* and *Ring*, but instead falls squarely under *Schad*.  Under *Schad*, the jury's general verdict did not violate Green's right to due process of law.  Accordingly, he

is not entitled to relief on claim number 5.

### D.   Ineffective Assistance of  Counsel

In claims six through eight, ten, and eleven, Green contends that he received ineffective assistance of counsel.

> To prevail on a claim of ineffective assistance of counsel, [petitioner] must show that . . . counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Second, the [petitioner] must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

In order to prevail on the first prong of the *Strickland* test, Green must demonstrate that counsel's representation fell below an objective standard of reasonableness.  *Id.* at 687-88.  Reasonableness is measured against prevailing professional norms, and must be viewed under the totality of the circumstances.  *Id.* at 688.  Review of counsel's performance is deferential.  *Id.* at 689.

### 1.   Failure To Move To Quash The Indictment

In his sixth claim for relief, Green argues that his trial counsel was ineffective in failing to move to quash the indictment.  Green contends that the indictment violated state law because it did not specify the means of kidnapping or aggravated sexual assault which, as discussed above, were pled in the alternative as the underlying felonies elevating the killing to capital murder.

In rejecting this claim, the state court stated that "an indictment need not allege the

constituent elements of the aggravating feature which elevates murder to capital murder." SH at 134 (quoting *Barnes v. State*, 876 S.W.2d 316, 323 (Tex.Crim.App.), *cert. denied*, 513 U.S. 861 (1994)). This is consistent with established Court of Criminal Appeals precedent. *See*, *e.g.*, *Beathard v. State*, 767 S.W.2d 423, 431 (Tex.Crim.App. 1989) (holding that the indictment need not allege the constituent elements of burglary in a capital murder case predicated on an underlying burglary); *Marquez v. State*, 725 S.W.2d 217, 236 (Tex.Crim.App.), *cert. denied*, 485 U.S. 872 (1987) (aggravated sexual assault); *Hammett v. State*, 578 S.W.2d 699, 708 (Tex.Crim.App. 1979), *cert. denied*, 448 U.S. 725 (1980) (robbery). The one case cited by Green, *Curry v. State*, 30 S.W.3d 394 (Tex.Crim.App. 2000), was a kidnapping case, not a capital murder case. Therefore, in that case, the State was required to prove all the elements of kidnapping, including the specific means by which the victim was abducted. Here, in contrast, the State was required to prove the elements of capital murder. As discussed in connection with Green's *Apprendi* claim, the State need not plead the specific elements of the underlying offense, but may plead the offenses generally and in the alternative. *Schad*, 501 U.S. at 631.

Counsel's failure to raise a meritless claim did not constitute deficient performance. *See*, *e.g.*, *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point"); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections."). Because counsel did not render deficient performance, Green fails to meet the first prong of the *Strickland* test and is not entitled to relief on this claim.

### 2.    <u>Failure To Object To Closing Argument</u>

In his seventh claim for relief, Green argues that his trial counsel rendered ineffective assistance by failing to object to statements in the prosecution's closing argument telling the jury that it need not agree unanimously on whether Green murdered Christina during a kidnapping or an aggravated sexual assault.  This is, in essence, a claim that his counsel was ineffective for failing to raise his *Apprendi* claim in the form of an objection to the closing argument.

As discussed both in the section on Green's *Apprendi* claim and in the preceding section, the *Apprendi* claim is without merit.  Therefore, the objection Green now argues his counsel should have made would have been equally without merit.  Because counsel has no obligation to raise meritless objections,  *Sones*, 61 F.3d at 415 n.5; *Koch*, 907 F.2d at 527, counsel did not render deficient performance.

### 3.    <u>Failure To Impeach Expert Testimony</u>

In his eighth claim for relief, Green contends that his trial counsel rendered ineffective assistance by failing to impeach the medical examiner's testimony that Christina's remains revealed evidence of a sexual assault.  Green claims that one of his trial attorneys contacted Dr. Raul Lede about a month after the trial, and that Dr. Lede called into question the validity of the sexual assault evidence.  Based on Dr. Lede's alleged statements, Green argues that counsel should have aggressively cross-examined the medical examiner on her conclusion that Christina suffered a sexual assault.  Green offers no affidavit by Dr. Lede or other evidence, other than the allegations in his petition, that Dr. Lede ever made any such

statement.  The state habeas court rejected this claim.

To the extent that Green claims that counsel should have called Dr. Lede as a witness, the claim lacks merit.  The Fifth Circuit has held that "complaints based upon uncalled witnesses [are] not favored because the presentation of witness testimony is essentially strategy and thus within the trial counsel's domain, and . . . speculations as to what these witnesses would have testified is too uncertain." *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (citing *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983), *cert. denied*, 467 U.S. 1251 (1984)).  "In order for the appellant to demonstrate the requisite *Strickland* prejudice, the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial." *Id.*  Green offers no affidavit or other sworn statement by Dr. Lede.  Therefore, he fails to demonstrate either that Dr. Lede would have testified, or that he would have given testimony helpful to Green.

To the extent that Green argues that counsel should have engaged in more aggressive questioning based on Dr. Lede's alleged opinion, this claim is also without merit.  Green offers nothing more than conclusory allegations that Dr. Lede holds such an opinion or that any basis exists for impeaching the medical examiner's conclusions.

> Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue . . . unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value. *Woodard v. Beto,* 447 F.2d 103 (5th Cir.), *cert. denied,* 404 U.S. 957, 92 S.Ct. 325, 30 L.Ed.2d 275 (1971). We are thus bound to re-emphasize that mere conclusory allegations do not raise a constitutional issue in a habeas proceeding. *Schlang v. Heard,* 691 F.2d 796, 798 (5th Cir.1982) (collecting cases).

*Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983) (footnote omitted).  Because Green offers nothing but conclusory allegations in support of this claim, he fails to demonstrate that the state habeas court's conclusion was unreasonable, or that there is any evidentiary support for his claim.

### 4.     Failure to Investigate Mitigating Evidence

Green's petition contains a point heading for a claim number 10 alleging ineffective assistance of counsel for failure to investigate important mitigating evidence.  No facts or argument follow this point heading.  Accordingly, Green has abandoned this claim.   "A party who inadequately briefs an issue is considered to have abandoned the claim."  *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir.), *cert. denied*, 513 U.S. 868 (1994); *see also Kithe v. United States Attorney General*, Civil Action No. H-07-2678, 2007 WL 4378007 at *2 (S.D. Tex. Dec. 5, 2007) (citing *Cinel*).

### 5.     Failure To Object To Evidence That Green Revoked His Consent To Search

Green cites several cases standing for the general proposition that a defendant's invocation of his Fourth Amendment rights cannot be admitted as evidence of guilt.  *See*, *e.g.*, *United States v. McNatt*, 931 F.2d 251 (4th Cir. 1991), *cert. denied*, 502 U.S. 1035 (1992); *United States v. Thame*, 846 F.2d 200 (3d Cir.), *cert. denied*, 488 U.S. 928 (1988).  In his final claim for relief, Green argues that his trial counsel rendered ineffective assistance by failing to object to evidence and comment that Green revoked his previously given consent to search his property.

Green mischaracterizes the evidence and prosecutor's comments in this case. Green did not refuse to consent to a search. On the contrary, he specifically consented to the search, and withdrew that consent only when the law enforcement officers conducting the search began probing the shallow grave where Christina's body was buried. As testimony revealed, once the officers inserted a probe into the grave, they developed probable cause for the search. Indeed, they obtained a search warrant after stopping their search upon Green's withdrawal of consent. Green does not challenge the validity of the warrant.

Green points to no Supreme Court case supporting his position that a defendant's rights are violated when a prosecutor comments on the defendant's withdrawal of consent in the context of explaining the chronology for police obtaining a search warrant so they could continue their investigation and search the suspect's premises. This Court is aware of no such precedent. Therefore, at a minimum, the Texas court's rejection of Green's claim was not "contrary to, or an unreasonable application of," Supreme Court precedent. 28 U.S.C. § 2254(d).

Even if counsel was deficient, however, Green cannot demonstrate prejudice. As noted above, the search stopped when Green withdrew his consent. The police then obtained a search warrant based on the probable cause established by evidence the police discovered during the consensual search, *i.e.*, evidence that the ground under the burn pile was recently disturbed, and the odor of decaying flesh released by the probe. When the search continued

pursuant to the warrant,[5] the police found that Green had dug up the shallow grave, and the police thereafter found Christina's body in a bag in Green's house.  Fiber and hair analysis also linked Green to Christina, and linked both of them to the grave, the bag, and Green's house.  Even if counsel should have objected to the comments on Green's withdrawal of consent and if the trial court had sustained such objection, the remaining evidence still clearly established the pertinent facts that Green dug up the grave, removed the body, and tried to hide it in his house.  The evidence of Green's guilt was overwhelming.  Therefore, assuming deficient performance by counsel, that performance did not "deprive the defendant of a fair trial, a trial whose result is reliable."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

### E.   Conclusion

For the foregoing reasons, Green fails to raise a viable claim for relief.  His claim that he is incompetent to be executed will be dismissed without prejudice as unripe.  All of his other claims will be dismissed with prejudice for the reasons stated in this opinion.

## IV.   Certificate Of Appealability

Green has not requested a certificate of appealability ("COA"), but this Court may determine whether he is entitled to this relief in light of the foregoing rulings.  *See Alexander v. Johnson*, 211 F.3d 895, 898(5th Cir. 2000) ("It is perfectly lawful for district court's [sic] to deny COA *sua sponte*.  The statute does not require that a petitioner move for a COA; it merely states that an appeal may not be taken without a certificate of appealability having

---

[5]     To the extent that Green contends that the police improperly obtained the warrant, that claim is not cognizable on federal habeas review.  *See Stone v. Powell*, 428 U.S. 465, 494 (1976).

been issued.")  A petitioner may obtain a COA either from the district court or an appellate

court, but an appellate court will not consider a petitioner's request for a COA until the

district court has denied such a request.  *See Whitehead v. Johnson*, 157 F.3d 384, 388 (5th

Cir. 1988); *see also Hill v. Johnson*, 114 F.3d 78, 82 (5th Cir. 1997) ("[T]he district court

should continue to review COA requests before the court of appeals does.").  "A plain

reading of the AEDPA compels the conclusion that COAs are granted on an issue-by-issue

basis, thereby limiting appellate review to those issues alone." *Lackey v. Johnson*, 116 F.3d

149, 151 (5th Cir. 1997).

A COA may issue only if the petitioner has made a "substantial showing of the denial

of a constitutional right."  28 U.S.C. § 2253(c)(2); *see also United States v. Kimler*, 150 F.3d

429, 431 (5th Cir. 1998).  A petitioner "makes a substantial showing when he demonstrates

that his application involves issues that are debatable among jurists of reason, that another

court could resolve the issues differently, or that the issues are suitable enough to deserve

encouragement to proceed further."  *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir.),

*cert. denied*, 531 U.S. 966 (2000).  The Supreme Court has stated that

> Where a district court has rejected the constitutional claims on
> the merits, the showing required to satisfy § 2253(c) is
> straightforward: The petitioner must demonstrate that reasonable
> jurists would find the district court's assessment of the
> constitutional claims debatable or wrong.  The issue becomes
> somewhat more complicated where . . . the district court
> dismisses the petition based on procedural grounds.  We hold as
> follows: When the district court denies a habeas petition on
> procedural grounds without reaching the prisoner's underlying
> constitutional claim, a COA should issue when the prisoner
> shows, at least, that jurists of reason would find it debatable

> whether the petition states a valid claim of the denial of a
> constitutional right and that jurists of reason would find it
> debatable whether the district court was correct in its procedural
> ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "The nature of the penalty in a capital case is a 'proper consideration in determining whether to issue a [COA], but the severity of the penalty does not in itself suffice to warrant the automatic issuing of a certificate.'" *Washington v. Johnson*, 90 F.3d 945, 949 (5th Cir. 1996) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)), *cert. denied*, 520 U.S. 1122 (1997).  However, "the determination of whether a COA should issue must be made by viewing the petitioner's arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)."  *Barrientes v. Johnson*, 221 F.3d 741, 772 (5th Cir. 2000), *cert. dismissed*, 531 U.S. 1134 (2001).

This Court has carefully and exhaustively considered each of Green's claims.  While the issues Green raises are clearly important and deserving of the closest scrutiny, the Court finds that each of the claims is foreclosed by clear, binding precedent.  This Court concludes that under such precedents, Green has failed to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). This Court concludes that Green is not entitled to a certificate of appealability on his claims.

## V.    <u>CONCLUSION AND ORDER</u>

For the foregoing reasons, it is **ORDERED** as follows:

1.    Respondent Nathaniel Quarterman's Motion for Summary Judgment (Doc. No.

7) is **GRANTED**;

2.      Petitioner Jonathan Marcus Green's Petition for Writ of Habeas Corpus (Doc.

No. 1) is in all respects **DENIED**;

3.      Green's first claim for relief is **DISMISSED WITHOUT PREJUDICE** as

unripe;

4.      Green's second through eleventh claims for relief are **DISMISSED WITH**

**PREJUDICE;** and

5.      No certificate of appealability shall issue.

The Clerk shall notify all parties and provide them with a true copy of this

Memorandum and Order.

SIGNED at Houston, Texas, this 15th day of February, 2008.

_Nancy F. Atla_

Nancy F. Atlas
United States District Judge