IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JONATHAN MARCUS GREEN, | § § | |
| Petitioner, | § § | |
| v. | § § § | CIVIL ACTION NO. H-07-827 |
| RICK THALER, Director, Texas Department of Criminal Justice-Correctional Institutions Division, | § § § § § § | |
| Respondent. | § | |

## **MEMORANDUM AND ORDER**

Jonathan Marcus Green is a Texas death-row inmate. He is scheduled for execution on October 10, 2012.

On September 28, 2012, Green moved in this court for an order staying his execution on the ground that he is mentally ill and incompetent to be executed under the standards set by the United States Supreme Court in *Ford v. Wainwright,* 477 U.S. 399 (1986), and *Panetti v. Quarterman,* 551 U.S. 930, 948 (2007). Motion for Stay of Execution [Doc. # 35] ("Motion"); *see* Supplement to Motion for Stay of Execution [Doc. # 38] ("Supp. Motion").

The United States Supreme Court has held that "'the Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane.'" *Panetti*, 551 U.S. at 934. This prohibition applies even if a prisoner was earlier competent to be held responsible for committing a crime and to be tried for it.

Once a prisoner makes a "preliminary showing that his current mental state would bar his execution, the Eighth Amendment . . . entitles him to an adjudication to determine his condition." *Id.* at 934-35. The record before this court shows that Green has made that substantial threshold showing, that the Texas state courts did not grant him a fair opportunity to demonstrate that he is incompetent, and thus the State of Texas denied him due process.

I.      **PROCEDURAL AND FACTUAL BACKGROUND**

In 2000, Green was convicted of capital murder and sentenced to death for murdering 12 year old Christina Neal. The evidence established that Green abducted, sexually assaulted, and strangled Neal. *See Green v. Quarterman*, No. H-07-cv-827 (S.D. Tex. Feb. 15, 2008).

The Texas Court of Criminal Appeals ("TCCA") affirmed Green's conviction and sentence. *Green v. State*, No. AP-74398 (Tex. Crim. App. Dec. 1, 2004), *cert. denied,* 547 U.S. 1005 (2006), and denied Green's state application for a writ of habeas corpus, *Ex Parte Green*, No. 61,225-01 (Tex. Crim. App. Mar. 23, 2005). Green filed a timely initial federal petition for a writ of habeas corpus on March 6, 2007, raising eleven claims for relief, including a claim that he was incompetent to be executed. This Court denied Green's claims and dismissed the petition on February 15, 2008. Green's claim that he was incompetent to be executed was denied without prejudice as premature. The Fifth Circuit denied a certificate of appealability, and dismissed his competency claim without prejudice on February 27, 2009. The Supreme Court denied *certiorari* on October 5, 2009.

On December 16, 2009, the State set an execution date of June 30, 2010. Twenty-nine days before the scheduled execution, on June 1, 2010, Green filed a motion in the state trial court for appointment of counsel and expert assistance to pursue a claim that he is incompetent to be executed. He also requested an evidentiary

hearing if the expert reports left material questions about his competency. On June 6, 2010, the trial court granted the motion for counsel and expert assistance and ordered psychological reports by Green's expert, Dr. Diane M. Mosnik, and the State's expert, Dr. Mark S. Moeller.

On June 21, 2010, Dr. Mosnik submitted a report concluding that Green suffered from severe mental illness and was incompetent, as of June 2010, to be executed. Dr. Moeller submitted a report agreeing that Green was mentally ill, but concluding that he was competent. On June 23, 2010, Green requested a competency hearing and a stay of execution. The State agreed to Green's request for a hearing, but opposed the request for a stay. On June 23, 2010, the trial court scheduled a hearing for June 28, but denied the stay. On June 23, 2010, the State produced documents revealing *inter alia* that mental health professionals with the Texas Department of Criminal Justice ("TDCJ") had concluded after observation in an inpatient clinical setting and psychological tests that Green suffered from delusions and hallucinations. He has been diagnosed as suffering from schizophrenia, undifferentiated type. Testing indicated that he was not malingering. *See*, *e.g.*, Motion, Exh. C, at 32-33. Green points out that the trial court gave him only two business days' notice of the hearing, which was inadequate time to prepare.[1] Green objected and requested a continuance to meet with and summon witnesses disclosed in documents produced by the State on June 23, 2010. The state trial court overruled the objection. A hearing took place first thing Monday, June 28, 2010. The trial court issued an oral ruling finding Green competent to be executed.

Following the oral ruling from the bench, on June 28, 2010, the trial court made an *ex parte* request to the Montgomery County District Attorney's Office to submit

---

[1] June 23, 1010, the day the state court ordered the hearing and denied the stay, was a Wednesday. The hearing took place the following Monday, June 28, 2010.

an order including proposed findings of fact and conclusions of law. Without giving Green notice of submission of the order or a chance to object to its contents, the trial court signed the proposed order without change on June 29, 2010. The order submitted by the District Attorney includes credibility findings about the parties' expert witnesses, including a finding that Green's expert was not credible in part because she has testified for the defense in several capital cases, but never for the prosecution.

Green appealed the trial court's ruling to the Texas Court of Criminal Appeals. On June 30, 2010, the TCCA stayed Green's execution. The TCCA also ordered the trial court to clarify its ruling because the standards used by the trial court were unclear. *See* Motion, Exh. G, at 2-4. The state trial court did so on July 14, 2010. *Id.*, Exh. G, at 5-7. On June 27, 2012, the Court of Criminal Appeals affirmed the trial court's finding that Green is competent to be executed. Supp. Motion, Exh. D. The mandate issued on September 17, 2012. *Id.*, Exhs. A, B, & C. Green now seeks a stay of execution in this Court.

## II. APPLICABLE LEGAL STANDARDS

### A. Jurisdiction

This is a petition for a writ of habeas corpus. Green was convicted of capital murder following a trial in Montgomery County, Texas. There is no dispute that Green's claim that he is incompetent to be executed did not become ripe until his execution was imminent. Therefore, Green's petition does not qualify as a successive petition, *see Panetti*, 551 U.S. at 943-47, and this Court has jurisdiction over the petition pursuant to 28 U.S.C. §§ 2241 and 2254.

### B. Competency To Be Executed

In *Ford v. Wainwright*, 477 U.S. 399 (1986), the Supreme Court held that "[t]he Eighth Amendment prohibits the State from inflicting the penalty of death upon a

4

prisoner who is insane." *Id.* at 410.  A prisoner is incompetent to be executed when his "mental illness prevents him from comprehending the reasons for the penalty or its implications." *Id.* at 417.  *Panetti* makes clear that this comprehension requires more than the petitioner merely knowing "the fact of his impending execution and the factual predicate for the execution." *Id.* at 942, 954-55 (internal quotation marks and citations omitted).

### C.   Due Process

Once a prisoner seeking a stay of execution makes a "substantial threshold showing of insanity," due process requires a fair hearing on his competency to be executed, in accord with fundamental fairness.  *Id*. at 426; *Panetti*, 551 U.S. at 949.  This includes the right to submit evidence and argument in a meaningful manner. *Id*.

### D.   The Anti-Terrorism and Effective Death Penalty Act

This federal petition for habeas corpus relief is governed by the applicable provisions of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 335-36 (1997).  Under the AEDPA, federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Kitchens v. Johnson*, 190 F.3d 698, 700 (5th Cir. 1999).

For questions of law or mixed questions of law and fact adjudicated on the merits in state court, this Court may grant habeas relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent]."  *See Martin v. Cain*,

5

246 F.3d 471, 475 (5th Cir.), *cert. denied*, 534 U.S. 885 (2001).  Under the "contrary to" clause, this Court may afford habeas relief only if "'the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.'" *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)), *cert. denied*, 532 U.S. 915 (2001).

The "unreasonable application" standard permits federal habeas corpus relief only if a state court decision "identifies the correct governing legal rule from [the Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 406.  "In applying this standard, we must decide (1) what was the decision of the state courts with regard to the questions before us and (2) whether there is any established federal law, as explicated by the Supreme Court, with which the state court decision conflicts."  *Hoover v. Johnson*, 193 F.3d 366, 368 (5th Cir. 1999).  A federal court's "focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence." *Neal v. Puckett*, 239 F.3d 683, 696 (5th Cir. 2001), *aff'd*, 286 F.3d 230 (5th Cir. 2002) (en banc), *cert. denied,* 537 U.S. 1104 (2003).  The focus for a federal court under the "unreasonable application" prong becomes "whether the state court's determination is 'at least minimally consistent with the facts and circumstances of the case.'" *Id.* (quoting *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997)); *see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001) ("Even though we cannot reverse a

6

decision merely because we would reach a different outcome, we must reverse when we conclude that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'")

The AEDPA precludes federal habeas relief on factual issues unless the state court's adjudication of the merits was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The state court's factual determinations are presumed correct unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Jackson v. Anderson*, 112 F.3d 823, 824-25 (5th Cir. 1997), *cert. denied*, 522 U.S. 1119 (1998).

## III. THE RECORD[2]

In support of the relief sought, Green submits evidence that he is schizophrenic and delusional, and believes that he is going to be killed as a result of demons conducting spiritual warfare over him. Dr. Mosnik, who performed numerous psychological tests on Green, interviewed him extensively and reviewed extensive records, diagnosed Green as schizophrenic. Dr. Mosnik opined that Green is suffering from severe delusions, hallucinations, and formal thought disorders that interfere with his overall level of functioning and that have been present for more than six months. Motion, Exh. A, at 6. TDCJ records dating to 2003 show progressing mental illness, including visual, auditory, and somatic hallucinations. For instance, Green has stuffed toilet paper in his ears to try to stop the voices in his head. On several occasions, he required medical attention to remove the impacted toilet paper from his ears. *See, e.g.,* Motion, Exh. C, at 41-42.

---

[2] Because of the press of time, the Court necessarily provides only an abbreviated summary of the record.

In connection with a prior motion filed before the TCCA stayed Green's execution in 2010, Green's sister Tina, who is a mental health professional, submitted an affidavit. She stated that Green had rambling conversations during jailhouse visits before his trial. She asked if he was hearing voices and he said that he was. June 28, 2010 Motion For Stay of Execution [Doc. # 27], Exh. C, at 1-2.

Green's sister Edwina submitted an affidavit stating that, during death row visits, Green talked about people controlling his body and changing his body, face and eyes. He called them "Sapphires" and told Edwina that a Sapphire was inside her and was making her sick. *Id.*, Exh. D, at 1-2. Green's attorney submitted an affidavit substantially corroborating the sisters' statements. In addition to claiming that these beings are changing his body, Green claims that they force him to hurt himself by, among other things, banging his head against the wall. He also claims that the voices order him to commit sexual acts. *Id.*, Exh. E, at 1.

In connection with the current motion, Green also submits an affidavit by death row inmate Thomas Bartlett Whitaker. Motion, Exh. H. Whitaker states that he has occupied the cell next to Green during two different periods of time, covering most of the period from June 15, 2010, to October 15, 2011, and had extensive opportunities to observe Green. He states that Green was often in a stupor caused by antipsychotic drugs, exhibited bizarre behavior, and did not maintain even basic personal hygiene. Whitaker also states that Green is confused about his situation. Among the specific examples of such confusion are Green's statement that he did not have a lawyer, despite receiving regular correspondence from his counsel. Green also expressed the belief that he was being tormented by demons.

The State's expert, Dr. Moeller, reviewed records and met with Green twice,

apparently for less than an hour on each occasion, on June 16 and June 18, 2010.[3] Dr. Moeller performed no tests. He testified at the June 28, 2010 hearing that he agreed that Green is mentally ill, but disagreed that Green was schizophrenic. Dr. Moeller testified that he did not believe that Green exhibited consistent and progressive thought disorganization or other symptoms of schizophrenia. Dr. Moeller did agree, however, that Green suffered from intermittent hallucinations and disorganized behaviors. Motion, Exh. B, at 5.

## IV. ANALYSIS

### A. Timeliness

Respondent argues that Green is not entitled to a stay because he was dilatory in raising his claim of incompetency. The record does not support Respondent's argument.

First, Respondent contends that Green waited until June 23, 2010, a mere seven days before his execution, to file his successive application in state court.[4] This statement is true, but misleading. As discussed below, there was confusion in the state courts as to whether this claim was to proceed as a successive application for a writ of habeas corpus under TEX. CODE CRIM. PRO. art. 11.071, or under TEX. CODE CRIM. PRO. art. 46.05, governing incompetency-to-be-executed claims. Green filed this incompetency claim on June 1, 2010, 29 days before his execution. The TCCA noted that Green's request for a hearing was timely as a matter of Texas law. *See* TEX.

---

[3] Dr. Moeller's billing record reflects that he spent a total of 4.25 and 4 hours, respectively, on June 16 and June 18, 2010, to travel to the Polunsky unit and meet with, and evaluate, Green. According to Google Maps, the Polunsky Unit, which is in Livingston, Texas, is 81.3 miles from Dr. Moeller's office in Bellaire, Texas, and is at least a 1.5 hours drive from that office.

[4] Green's federal petition is not successive under 28 U.S.C. § 2254 because the issue of his competency to be executed was a claim originally raised but not ripe when the other claims were addressed by the state court and this Court.

9

CODE CRIM. PRO. art. 46.05 § l-1 (a competency petition must be filed no later than 20 days before the scheduled execution); *Green v. State*, ___ S.W.3d ___, 2012 WL 2400651 at *10 (Tex. Crim. App. June 27, 2012) ("Green timely filed his motion to have competency determined under the statute—that is to say, he filed it sufficiently early that this Court is not foreclosed from reviewing the trial court's ruling thereon"). Because Green complied with statutorily prescribed time limits, he was not dilatory in pursuing his rights in state court.

Respondent also states that Green waited until after business hours on Friday, September 28, 2012, to file this federal stay motion. This statement is correct. Green notes, however, that the State set his execution date on August 14, 2012, and counsel did not receive notice of the execution date until August 20, 2012. Green filed objections in state court, arguing that Green's condition changed since the previous hearing more than *two years* earlier. It is not apparent from the record when these state court proceedings concluded, but it is clear that Green did not wait an inordinately long amount of time to file this federal petition.

Respondent's argument regarding the timing of the pending federal petition, Green's Motion, might carry some weight if this Court was inclined to grant a stay based solely on a perceived need to further develop the record or allow additional argument. As discussed below, however, this Court concludes that the Texas state courts failed to provide due process and applied incorrect legal standards. The inadequacies of the state court's process and the resulting constitutional violations require this Court to stay Green's execution. These deficiencies would have necessitated a stay and additional federal proceedings even if Green had filed the Motion a month earlier. There accordingly is no prejudice to Respondent attributable

to the timing of Green's Motion.[5]

### B. Substantial Threshold Showing Of Insanity

Green has made a substantial threshold showing of insanity. He has submitted evidence from lay observers about his bizarre behavior and his delusional statements. He has submitted expert evidence corroborating these lay observations, opining that he is likely psychotic.

In light of Green's evidence, due process required the state habeas court to grant Green "a 'fair hearing' in accord with fundamental fairness." *Panetti*, 551 U.S. at 949 (citing *Ford*, 477 U.S. at 426). A fair hearing "include[s] an opportunity to submit evidence and argument from the prisoner's counsel...." *Id.* at 950 (internal quotation marks and citation omitted).

### C. Fair Hearing

Green argues that, because he had only two business days between the date the state court scheduled the hearing and the date on which the hearing occurred, he did not have time to locate and obtain the presence of several important witnesses. These include TDCJ mental health professionals who treated Green at the Jester IV unit, a TDCJ mental health unit. Green notes that his inability to call these witnesses is especially important because the state court relied heavily on its determination of the relative credibility of the expert witnesses the parties called live at the hearing. The TDCJ witnesses would likely have further substantiated Dr. Mosnik's conclusions. These mental health professionals have examined, interacted with, and diagnosed Green for years during his imprisonment, and concluded that he was not malingering.

---

[5] It also appears that, due to the passage of time since the state court competency hearing and stay, that Green is entitled to a re-review of his competency in state court. *See* TEX. CODE CRIM. PRO. art. 46.05(m). The question whether this case should be stayed to allow Green to seek a new hearing in state court will be taken up in a conference with the parties.

This is a psychiatric conclusion directly contrary to the State's sole witness, Dr. Moeller, a conclusion on which the state trial court relied for her finding of competency.[6] Green requested, and was denied, a continuance of the hearing and authorization to serve process on these witnesses.

Green's inability to present these fact witnesses is closely analogous to the process found unconstitutional in *Panetti*, where the state court relied on court-appointed experts' opinions to conclude that petitioner Panetti was malingering his symptoms of mental illness. Panetti requested, and was denied, an opportunity to present his own expert's opinion in rebuttal. *Panetti*, 551 U.S. at 951.

While Green was able to present evidence through an expert of his own choosing, he was denied the opportunity to present additional significant evidence by mental health professionals who had treated and observed him over the course of several years. These professionals had far greater foundation for their opinions than the state's, or even Green's own, expert. Based on the voluminous medical records presented in support of this motion, there is a reasonable probability that these witnesses would have corroborated Dr. Mosnik's conclusion that Green was not malingering, and would have rebutted Dr. Moeller's conclusion to the contrary.

Respondent now argues that the live testimony of these witnesses would have been irrelevant because the State stipulated to the accuracy of the medical records, and stipulated that the witnesses would have testified in accordance with those records. This contention is without merit. The state court's conclusion did not rest on the presence of symptoms; instead, the court focused on the credibility of witnesses and the question of whether Green was malingering, *i.e.*, faking or exaggerating his

---

[6] The importance of these witnesses is highlighted by the fact that Dr. Moeller's assessment was based on relatively brief meetings with Green. *See* note 3 and accompanying text, *supra*.

symptoms for the purpose of delaying or halting his execution.[7] The state court also made findings on Green's psychological state. The TDCJ medical personnel had strongly probative evidence to offer through their observations of Green and their opinions on whether his symptoms were real, as well as the degree and type of psychological deficits he possessed. Considering the heavy reliance the state court's opinion places on its credibility determinations of the two experts and the notable absence of any reference to the TDCJ medical records in the state court findings, the state court's denial to Green of the opportunity to present the TDCJ witnesses casts serious doubt on the fundamental fairness of the competency proceeding. *See Panetti*, 551 U.S. at 952 (holding open the possibility that "other procedures, such as the opportunity for discovery or for the cross-examination of witnesses would in some cases be required under the Due Process Clause").

        **D.    State Court's Ex Parte Solicitation and Reliance on State's Proposed "Findings of Fact"**

Green also objects that the trial court followed an unconventional procedure in its *ex parte* solicitation of written proposed findings of fact from the State, without giving Green notice or an opportunity to object. *See* Motion, Exh. E. Respondent argues that the circumstances surrounding this order are irrelevant because the state court announced a decision against Green from the bench. The order provided by the State, however, did not merely state a decision by the court, but also contained specific findings of fact requiring deference by the TCCA on review. Green was never given notice that these findings would be entered, or an opportunity to object. The TCCA appears to have relied on the existence of these written findings.

---

[7]     The state court also determined that Green had a rational understanding of the fact of, and reasons for, his execution. As discussed *infra*, that court's apparent definition of Green's "rational understanding" was too narrow under the *Panetti* legal standard.

The convicting court, at the request of the TCCA, later issued a "clarification" due to apparent confusion over which legal standards she applied. *See* Motion, Exh. G, at 5-7. While the clarification states that the decision was based, in part, on the judge's observations in the courtroom, the observations she specifies relate primarily to Green's appearance and demeanor. In any event, the procedure employed by the judge denied Green any opportunity to object or seek changes or clarifications to the findings. The *ex parte* procedure by itself renders the state court's findings less deserving of deference. *See*, *e.g.*, *Jefferson v. Upton,* ___ U.S. ___, 130 S. Ct. 2217, 2223 (2010).

### E. Conclusions of Law

It also appears that the state trial court applied incorrect legal standards. That court sought to determine whether there was a change in Green's mental capacity since his imprisonment in 2002. *See* Motion, Exh. G, at 3.[8] The correct question was whether Green was presently competent, regardless of his comparative mental status between 2002 and 2010. *See*, *e.g.*, *Panetti*, 551 U.S. at 934 ("Prior findings of competency do not foreclose a prisoner from proving he is incompetent to be executed *because of his present mental condition*) (emphasis added). The TCCA recognized that "some of the standards mentioned [by the convicting court] are not applicable in this instance. . . ." Motion, Exh. G, at 3.

Moreover, Green testified that he understood he was to be executed for murdering Christina Neal, but that he did not kill her. Other evidence suggests that Green believes he will be executed "as a result of the war between the 'good and evil

---

[8] While the convicting court's written "clarification" states that she applied the standards of article 46.05, her oral statements in court, quoted by the TCCA on page 3 of Exhibit G, clearly state the standards of article 11.071. This raises questions about whether her *post hoc* clarification accurately describes the standards she applied in reaching her decision.

14

personalities constantly fighting for control of his body in order to kill him.'" Mosnik Report, Motion, Exh. A, at 5-6. Based on Green's testimony that he understood he was convicted of killing Neal and was to be executed based on that crime, the state court found that he had a rational understanding of the reason for his execution.

The petitioner in *Panetti* also understood that he was to be executed for murdering his victims, but believed this justification to be a sham. Instead, he believed he was to be executed as a result of "spiritual warfare" between demons and God. 551 U.S. at 940, 954-55. The Supreme Court rejected the notion that competency to be executed merely "requires the petitioner know no more than the fact of his impending execution and the factual predicate for the execution." *Id.* at 942, 954-55 (internal quotation marks and citations omitted).

Like Panetti, Green has evidence that he believes the reason for his impending execution is something other than the stated legal justification. The state court's primary reliance on his understanding of the legal justification is unreasonable in light of *Panetti*.

### F. New Evidence

Respondent argues that this Court cannot consider Green's new evidence under the Supreme Court's decision in *Cullen v. Pinholster*, ___ U.S. ___, 131 S.Ct. 1388 (2011). *Pinholster* held that a federal habeas court, in determining whether a state court's adjudication was an unreasonable determination of the facts or an unreasonable application of Supreme Court precedent may consider only the record that was before the state court. *Id.* at 1398.

In granting Green's Motion for a stay, this Court finds that the state court prevented Green from presenting relevant evidence he wished to present. The *procedure* employed by the state court denied Green due process. The conclusion that Green is entitled to a stay of execution is based on the unconstitutionally defective

process employed by the state court, as well as on the state court's unreasonable application of Supreme Court precedent. As to the procedural inadequacies, which are described above, it is circular, at best, to contend that a state court may actively prevent a petitioner from presenting admissible evidence, and then claim that the evidence is forever barred from federal review because it was not presented in state court. Regarding the unreasonable application of the Supreme Court precedent, the Court relies on the state court's misstatement of the controlling legal standard, and its misapplication of the *Panetti* standard.

Because the state court unreasonably applied Supreme Court precedent and failed to provide due process, a stay of execution is necessary under *Panetti*. The Court here is concerned only with the question whether Green is entitled to a stay of execution and not with the ultimate question of whether he is incompetent to be executed. If the Court later has the duty to address the ultimate question of Green's competency, however, the Court will not be prevented from conducting an evidentiary hearing or considering other evidence because, simply, Green did not "fail[] to develop the factual basis of his claim . . . ." 28 U.S.C. § 2254(e)(2). Rather, he was prevented from doing so. Where a petitioner makes a diligent effort to develop the factual record in state court, a federal habeas court can conduct an evidentiary hearing into the claim where appropriate. *See Williams v. Taylor*, 529 U.S. 420, 430-37 (2000).

### G. Conclusion

Green presents sufficient evidence to require the basic protections outlined in *Ford* and *Panetti*. It is clear from the record that, at a minimum, the trial court prevented Green from presenting testimony by treating mental health professionals, relied on an order solicited from and drafted by the State to which Green had no opportunity to object, and applied at least one incorrect legal standard.

By employing procedures that denied Green due process, the state court thus made an unreasonable determination of the facts. By using incorrect legal standards, the state court engaged in an unreasonable application of Supreme Court precedent. Green is therefore entitled to a stay of execution, the state court findings are entitled to no deference under the AEDPA, and Green is entitled to an opportunity to further develop the record.

## V.   ORDER

1. Green's Motion To Stay Execution (Doc. # 35) is **GRANTED**. Green's execution is **STAYED**.

2. A scheduling conference will be held on **October 18, 2012** at **10:00 a.m.**

SIGNED at Houston, Texas, this 8th day of October 2012.

_____
Nancy F. Atlas
United States District Judge